UNITED STATES of America

v.

Markus A. USECHE, Lance Corporal (E–3), U.S. Marine Corps.

NMCCA 201100001.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 12 July 2010.

29 Feb. 2012.

---

658

For Appellant: LT Ryan Santicola, JAGC, USN; LT Gregory M. Morison, JAGC, USN.

For Appellee: Maj Elizabeth A. Harvey, USMC; Capt. Samuel C. Moore, USMC; Capt. Mark V. Belfantz, USMC.

Before J.K. CARBERRY, R.Q. WARD, M.D. MODZELEWSKI, Appellate Military Judges.

## PUBLISHED OPINION OF THE COURT

CARBERRY, Senior Judge:

A military judge sitting as general court-martial convicted the appellant, contrary to his pleas, of making a false official statement, forcible anal sodomy, consensual oral sodomy, drunk and disorderly conduct, and soliciting another to obstruct justice in violation of Articles 107, 125, and 134 Uniform Code of Military Justice, 10 U.S.C. §§ 907, 925, and 934, respectively. The appellant was sentenced to nine years confinement, reduction to E–1, and a dishonorable discharge from the United States Marine Corps. The convening authority (CA) approved the adjudged sentence.

The appellant raises eight assignments of error on appeal: (1) that his conviction for consensual oral sodomy violated his constitutional liberty interest in private consensual sexual activity; (2) that excepting the words "by force and without the consent of [RM]" and finding the appellant guilty of consensual sodomy constitutes a material variance; (3)

that the evidence supporting his conviction for consensual oral sodomy was legally and factually insufficient; (4) that the evidence supporting his conviction for soliciting another to obstruct justice was legally and factually insufficient; (5) the specification concerning the solicitation of another to obstruct justice failed to state an offense because it omitted the terminal element of Article 134; (6) that he is entitled to new post-trial processing because he did not receive a complete copy of the record of trial; (7) that the evidence supporting his conviction for forcible anal sodomy was factually insufficient; and, (8) that the Government improperly asked leading questions of the victim during direct examination.[1]

## Facts

On 29 August 2009, the appellant, a lance corporal in the United States Marine Corps, went on a blind date with the victim, RM, a twenty-two-year-old special-needs woman. RM had an IQ of 46 and had been diagnosed by the State of Hawaii, Department of Human Services as mentally retarded. AE XIII Pg 13,19. The appellant and RM met at the food court of a local mall for their first and only date. RM's mother and a mutual friend monitored the meeting from a nearby table. After some time at the mall, the foursome left and visited a nearby park. At the park, the appellant asked RM's mother for permission to take RM back to his barracks room. RM's mother agreed and asked the appellant to please take care of her daughter.

The appellant and RM then went to the appellant's room. He immediately made her a large alcoholic drink, and they watched pornographic movies. They then had intercourse. Despite RM's alcohol consumption and diminished mental capabilities, the military judge found that she possessed the capacity to consent. During the initial sexual activity, which included oral copulation and vaginal intercourse, the appellant put a pair of handcuffs on RM. At first, RM consented to use of the handcuffs, but then tried to remove them. The appellant then placed her

hands behind her back and tightened the handcuffs such that RM's wrists began to hurt. He then flipped her over and forced his penis into her anus. She protested and repeatedly cried, "No." Despite her protests, the appellant did not stop until he heard his phone ring. He left the room, took the call, and showered. He then visited friends down the hall and invited them to "check out the bitch" in his room. Two Marines who went to the room found RM naked, handcuffed, crying and saying that she was going to kill herself. The Marines notified the barracks Duty Noncommissioned Officer who told the appellant to remove her from the barracks. Another Marine then drove RM and the appellant back to the mall to meet her friends. RM told them that she was raped and an investigation ensued.

Approximately six months later, the appellant contacted the mutual friend who had arranged for his date with RM. The appellant asked her to extend an offer to RM. The appellant said he would pay RM $1,000.00 if she agreed to drop the case against him. RM declined the offer when she heard it and informed her victim representative.

At trial, the parties requested that the military judge issue special findings pursuant to RULE FOR COURT–MARTIAL 918(b), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2008 ed.). These findings pertained solely to the two specifications under Article 125, forcible anal sodomy and forcible oral sodomy. With respect to the allegation of forcible oral sodomy, the military judge ruled as follows:

> ... I have a reasonable doubt as to the force and lack of consent element ... Accordingly, I found the accused guilty ... excepting the words, 'by force and without consent....' I [also] determined that although she was legally competent to consent to sexual activity, the vulnerability of the victim in this case removed what is ostensibly private sexual conduct from any protected liberty interest. I additionally determined that engaging in fellatio inside a military barracks placed the act in a

---

1. Assignments of Error 6–8 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

unique military context that removed the act from any protected liberty interest. See AE XX at 5.

## Discussion

Four of the appellant's eight assignments of error arise from the sodomy specifications under Article 125. Three of these pertain to the oral sodomy specification. The fourth pertains to the forcible anal sodomy specification. The oral sodomy specification initially stated in relevant part, "[the appellant] did ... commit oral sodomy with [RM], by force and without the consent of the said [RM]." Additional Charge IV. The military judge found the appellant guilty with the exception of "by force and without [the] consent of the said [RM]." Record at 590. We address the appellant's assignments of error in turn, beginning with his argument that under *United States v. Marcum,* 60 M.J. 198 (C.A.A.F. 2004) and *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), he had a protected liberty interest to engage in consensual oral sodomy.

### *Lawrence, Marcum, and Liberty Interests in Certain Sexual Acts*

■ We review *de novo* the question of whether the appellant's conduct falls into the "zone of autonomy" recognized by *Marcum.* In *Marcum,* the Court of Appeals for the Armed Forces (CAAF) considered facial and as-applied constitutional challenges to Article 125. These challenges came on the heels of *Lawrence,* in which the Supreme Court invalidated a state's anti-sodomy statute as volatile of an individual's due process liberty interests. The CAAF rejected the facial challenge, but held that Article 125 may be unconstitutional under certain circumstances. The CAAF developed a three-part test to determine when a service member has a protected liberty interest to engage in sodomy: "first, was the conduct that the appellant was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court; second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence;* and, third, are there additional factors relevant solely in the military environment that affect the nature

and reach of the *Lawrence* liberty interest". *Marcum* at 206–07. These are a conjunctive series of questions that must all be answered favorably to the appellant if his conduct is to fall within the "zone of autonomy" so that he is protected against prosecution under Article 125. *Id.* at 208.

We begin our analysis with the first *Marcum* factor: whether the oral sodomy between the appellant and RM was of a nature to bring the appellant's conduct within the liberty interest articulated by *Lawrence.* We find that it was. In this instance, the appellant engaged in private oral sodomy with another adult who was capable of consenting.

The second *Marcum* factor we address is whether the appellant's conduct nonetheless encompassed any of the behavior or factors that were identified by the Supreme Court as not involved in *Lawrence.* For instance, did the conduct involve "persons who might be injured or coerced or who are situated in relationships where consent might not be easily be refused?" *Marcum,* 60 M.J. at 207. Although the military judge expressed reasonable doubt as to the element of force and lack of consent, he concluded RM was a particularly vulnerable person, i.e., a mentally retarded person who cognitively functioned at the level of a 9–year–old child. Consequently, he found that the appellant's conduct fell outside the protected liberty interest identified in *Lawrence.* We agree. The appellant's actions in providing alcohol to a mentally retarded adult and engaging in oral sodomy while she was handcuffed convince us that his conduct was well-outside the *Lawrence* liberty interest.

Turning to the third *Marcum* factor, we also find that the presence of RM in a barracks room, naked, handcuffed, despondent, and crying for help; the appellant's invitation to other Marines to "check out the bitch in his room"; the discovery of her presence by two Marines; and, the Duty NCO having to order her removed from the barracks all establish that the appellant's conduct was prejudicial to good order and discipline and was thus outside the reach of the appellant's *Lawrence* liberty interest. For the preceding reasons, we find that the appellant's con-

duct did not fall within the "zone of autonomy" and he is not protected from prosecution under Article 125, UCMJ.

### Material Variance in a Specification

The appellant's second assignment of error alleges that there was a material variance between the Article 125 forcible oral sodomy specification that he was charged with, and the Article 125 consensual oral sodomy specification of which he was convicted. The appellant maintains that although consensual sodomy may seem to be a lesser included offense of nonconsensual forcible sodomy, the elements of proof are so drastically altered by the analyses of *Lawrence* and *Marcum* that the appellant did not have sufficient notice of the nature of the offense. The appellant essentially argues that he appeared in court prepared to defend against allegations of forcible sodomy, not to argue that he had a protected liberty interest to engage in sodomy with RM.

Whether an amended specification materially deviates from a charged specification is a question of law we review *de novo*. According to R.C.M. 918(a)(1), an individual may be found guilty of a lesser included offense. He may also be found guilty of an offense with exceptions (and not guilty of the exceptions). Generally, variances between charged offenses and amended offenses are permissible, but the exceptions may not be used to substantially change the nature of the offense. "[T]o prevail on a fatal variance claim, an appellant must show that the variance was material and that he was substantially prejudiced thereby." *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F.2009) (citations omitted). We test for prejudice by asking: (1) whether the variance put the appellant at risk for another prosecution for the same conduct; (2) whether the variance misled the appellant so that he was unable to adequately prepare for trial; or, (3) whether the variance denied the appellant the opportunity to defend against the charge. *Id.*

Applying these considerations to the instant case, we find the appellant's arguments without merit. The appellant has not demonstrated that he was substantially prejudiced by the military judge's decision to find

him guilty of a lesser included offense. Double Jeopardy principles would bar another prosecution for the same conduct; the appellant has not indicated how he was misled and unable to adequately prepare for trial; and he has not shown that he was denied the opportunity to defend against the charge. Moreover, this court has, in the post-*Marcum* era, confirmed that consensual sodomy is a lesser included offense of nonconsensual sodomy, notwithstanding the unique legal analysis required by *Marcum*. See, e.g., *United States v. Stephens*, No. 200602368, 2007 WL 3025080, 2007 CCA LEXIS 428 (N.M.Ct.Crim.App. 11 Oct. 2007). As the appellant has not made the requisite showing of substantial prejudice, we do not need to reach the next question, whether the variance between the charged offense and the convicted offense was "material."

### Article 125, and Legal and Factual Sufficiency

The appellant alleges legal and factual insufficiencies with respect to the conviction for consensual sodomy. First, the appellant argues that *Marcum*'s three-part test essentially alters the elements that the Government must prove in order to sustain a conviction for consensual oral sodomy under Article 125. Accordingly, the appellant claims, the Government's proof at trial was legally and factually insufficient. We address this claim *de novo*. See, e.g., *United States v. Beatty*, 64 M.J. 456 (C.A.A.F.2007).

The test for legal sufficiency is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F.2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is whether, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of [the appellate court] are themselves convinced of the accused's guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987). We start our analysis

with an examination of the elements of the crime.

As to the offense of consensual sodomy, the Government must have proved that the accused engaged in unnatural copulation with a certain other person. Unnatural copulation includes the placing of the accused's sexual organ in the mouth of another person. Turning to the evidence, we note that RM testified that the appellant placed his penis in her mouth. That testimony alone is certainly sufficient to lead any trier of fact to reasonably conclude beyond a reasonable doubt that the appellant's actions met the elements of Article 125.

▪ The appellant argues, however, that the *Marcum* factors are additional *de facto* elements for the offense of consensual sodomy. This argument is unpersuasive. The elements of an offense are given by statute, not judicial opinion. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The three-part test from *Marcum* is merely the analytical approach adopted in light of *Lawrence* to determine whether an appellant may be constitutionally protected against a prosecution under Article 125. Accordingly, we find this argument to be without merit.

### Obstruction of Justice, Factual and Legal Sufficiency, and the Terminal Element of Article 134

The appellant's next two assignments of error arise from Additional Charge III, Specification 2, solicitation of another to obstruct justice. The appellant claims, first, that the proof offered at trial concerning this charge was legally and factually insufficient and second, that this charge failed to state an offense because it did not include an Article 134 terminal element. Whether the Government's presentation of proof was legally and factually sufficient to sustain a conviction is necessarily predicated on whether the specification stated an offense. Accordingly, we will address these questions in reverse order.

▪ We review *de novo* whether a specification states an offense. *United States v. Crafter,* 64 M.J. 209, 211 (C.A.A.F.2006). A specification must allege every element of the offense "either expressly or by necessary implication, so as to give the accused notice and protect him against double jeopardy," if it is to state an offense. *United States v. Dear,* 40 M.J. 196, 197 (C.M.A.1994) (citations and internal quotation marks omitted). Article 134 specifications must therefore include the terminal element either explicitly or by necessary implication. *United States v. Fosler,* 70 M.J. 225, 229 (C.A.A.F.2011).

In *Fosler,* the CAAF held that merely including the word "wrongfully" in the specification and listing it as an Article 134 offense was insufficient to necessarily imply that the accused's conduct was prejudicial to good order and discipline, or was of a nature to be service-discrediting. The CAAF's holding, however, was limited to specific circumstances: "[i]n contested cases, when the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text." *Id.* at 230 (citation and footnote omitted). But *Fosler* also cites by comparison an earlier case concerning the sufficiency of specifications, *United States v. Watkins,* 21 M.J. 208, 209–10 (C.M.A.1986), which posited a more tolerant view of deficient specifications if they were challenged for the first time on appeal and were not otherwise so defective that they could not "within reason be construed to charge a crime." *Id.* at 210 (citations and internal quotation marks omitted). In light of the twin analyses of *Fosler* and *Watkins,* this court has since held that:

> [W]e view allegations of defective specifications through different analytical lenses based on the circumstances of each case. Where the specification was not challenged at trial, we liberally review the specification to determine if a reasonable construction exists that alleges all elements either explicitly or by necessary implication. Where the specification was challenged at trial, however, we review it by constructing its wording narrowly, adhering closely to the plain text.

*United States v. Hackler,* 70 M.J. 624, 626 (N.M.Ct.Crim.App.2011).

■ Applying this framework to this case, we begin by noting that although this was a contested court-martial, the appellant did not challenge the specification for its omission of the terminal element at trial. We will therefore read the specification with maximum liberality and uphold it as valid unless it is so defective that it cannot reasonably be construed to allege an offense.

■ The specification alleged that the appellant wrongfully solicited AM, a civilian, "in an effort to influence [RM] not to testify concerning the alleged sodomy charge before an investigating officer in the case of *U.S. v. Lance Corporal Markus A. Useche, U.S. Marine Corps*". Read liberally, the specification necessarily implies that the appellant's actions were of a nature to be service discrediting, or were prejudicial to good order and discipline within the unit, or both. The specification is not so defective that it cannot be reasonably construed to charge a crime. We conclude that the wording of the specification necessarily implies the terminal element of Article 134 and put the appellant on sufficient notice of what he needed to defend against.

Furthermore, after applying the tests for legal and factual sufficiency, we are convinced the evidence was legally and factually sufficient to prove the appellant's guilty beyond a reasonable doubt. *See Oliver,* 70 M.J.

at 68 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781); *Turner,* 25 M.J. at 325.

**Supplemental Assignments of Error**

Pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), the appellant submitted the following three summary assignments of error: the Government failed to deliver a complete record of trial to him; the evidence supporting his conviction for forcible sodomy is factually insufficient; and, the military judge abused his discretion in allowing the Government to use leading questions in its direct examination of RM. After carefully reviewing the record of trial, these assignments of error, and the Government's response, we find that the matters raised by the appellant do not merit relief.

**Conclusion**

The findings and the sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, we affirm the findings and the sentence, as approved by the CA.

Judge WARD and Judge MODZELEWSKI concur.