# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, M.C. HOLIFIELD, A.Y. MARKS**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## ALONZO BASS III
## AVIATION BOATSWAIN'S MATE SECOND CLASS (E-5), U.S. NAVY

## NMCCA 201400229
## GENERAL COURT-MARTIAL

**Sentence Adjudged:** 28 February 2014.
**Military Judge:** CAPT Robert B. Blazewick, JAGC, USN.
**Convening Authority:** Commander, Navy Region Southeast, Naval Air Station, Jacksonville, FL.
**Staff Judge Advocate's Recommendation:** CDR N.O. Evans, JAGC, USN.
**For Appellant:** LT Carrie E. Theis, JAGC, USN; LT Ryan Aikin, JAGC, USN.
**For Appellee:** Maj Suzanne Dempsey, USMC; LT Ann E. Dingle, JAGC, USN.

**18 August 2015**

---
### PUBLISHED OPINION OF THE COURT
---

BRUBAKER, Senior Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of violating a lawful general regulation (sexual harassment), two specifications of wrongful sexual contact, and two specifications of sodomy, in violation of Articles 92, 120, and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920, and 925. The members sentenced him to seven years' confinement, total forfeiture of pay and

allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged.

The appellant raises 11 assignments of error (AOEs):

(1) the military judge erred in instructing the members that consensual sodomy is a lesser included offense (LIO) of forcible sodomy;

(2) the appellant was not on notice of the alternative crime of consensual sodomy;

(3) the appellant's conviction for consensual sodomy is fatally ambiguous;

(4) the members created a prejudicial, fatal variance when they convicted the appellant of consensual sodomy;

(5) the military judge abused his discretion by permitting the Government to argue that the appellant had a general propensity to commit sexual crimes based only on the charges before the court-martial;

(6) trial counsel committed prosecutorial misconduct by referencing the victim advocate, misstating evidence, giving his personal opinion, and "accusing the members of victim-blaming if they believed the defense's case";[1]

(7) the military judge erred when he foreclosed the defense from undermining the complaining witness's credibility;

(8) the appellant's sentence is inappropriately severe;

(9) the military judge's presentation of the Secretary of Defense's memorandum on sexual assault to the members created the appearance of unlawful command influence;

(10) the appellant was improperly denied access to the victim's medical records; and

(11) the trial counsel committed prosecutorial misconduct by cross-examining the appellant about the fact that he was facing life in prison.[2]

In a previous decision issued in this case, *United States v. Bass*, 2015 CCA LEXIS 221 (N.M.Ct.Crim.App. 27 May 2015), we

---

[1] Appellant's Brief of 16 Sep 2014 at 32.

[2] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

set aside the findings of guilty as to both specifications under Charge III and Charge III, dismissed Charge III and its specifications, set aside the sentence, and authorized a rehearing on the sentence. On 26 June 2015, the Government moved for *en banc* reconsideration. The court denied *en banc* reconsideration, but we granted panel reconsideration. After reconsideration, we withdraw our opinion dated 27 May 2015 and substitute this opinion. We reach the same result, but take the opportunity to clarify the prejudice requirement for error related to LIOs.

After carefully considering the record of trial and the submissions and oral arguments of the parties, we find merit in the appellant's first AOE and grant relief in our decretal paragraph. AOEs (2) through (4) and (8) are therefore mooted. Furthermore, AOE (10) implicates only the sentencing phase of the trial and our decretal paragraph sets aside the sentence; thus, even assuming without deciding that the military judge erred by denying the appellant access to the victim's medical records, whether such error was prejudicial is also mooted. Finally, having considered AOEs (7), (9), and (11), we find them without merit. *United States v. Clifton*, 35 M.J. 79, 81-82 (C.M.A. 1992). We address the remaining AOEs below, but find no prejudicial error regarding them. Arts. 59(a) and 66(c), UCMJ.

### Factual Background

All the specifications in this case allege offenses against two Sailors who served with the appellant aboard USS JOHN C. STENNIS (CVN 74): Machinist's Mate Third Class (MM3) TM and Aviation Boatswain's Mate Second Class (ABE2) MH. We will consider each in turn.

*MM3 TM*

After reporting to the STENNIS in April 2011, MM3 TM and the appellant developed a close friendship that evolved into a consensual sexual relationship. While deployed aboard the ship in the fall of 2011, MM3 TM stated that she ended her sexual relationship with the appellant after she realized their relationship was not exclusive. MM3 TM, however, wished to remain in contact with the appellant and continue their friendship.

MM3 TM alleged that after their consensual sexual relationship ended, the appellant sexually assaulted her on three separate occasions between about November 2011 and February 2012—all while deployed aboard the STENNIS. MM3 TM

3

alleged that during one of the incidents, the appellant both orally and anally sodomized her.

The appellant ultimately admitted to sexual activity with MM3 TM aboard the ship, including oral and anal sodomy, but claimed it was consensual.

The members acquitted the appellant of all offenses against MM3 TM alleging the use of force, but convicted him of two specifications of non-forcible sodomy with her.

*ABE2 MH*

ABE2 MH reported to the STENNIS in July 2011. Shortly thereafter, she transferred to the appellant's division where the two began to work closely. The appellant made unwanted, inappropriate comments to ABE2 MH such as "you have a nice ass for a white girl." ABE2 MH also alleged that between the months of August 2011 and January of 2012 the appellant did the following: reached into the back pocket of her uniform without permission to retrieve chewing tobacco, touching her buttocks over her clothing in the process; pushed her against the wall and kissed her against her will; approached from behind her and grabbed her by the crotch, lifting her from the ground and making contact with her genitalia over her clothes as a result; and in one instance, grabbed her, pushed her against the wall, kissed her, and without consent forced his hands down her pants and touched her genitalia over her underwear.

The appellant admitted to much of the physical contact, but asserted it was consensual. The members found the appellant not guilty to four specifications of sexual assault against ABE2 MH, including two related to placing his hand into her back pocket, but convicted him of sexually harassing her and two specifications of wrongful sexual contact against her.

**Analysis**

## I. Non-Forcible Sodomy as an LIO

The appellant's first four AOEs relate to his convictions for non-forcible sodomy as an LIO of forcible sodomy.[3]

---

[3] This opinion interprets and pertains only to the former version of Article 125. On 26 December 2013, the President signed into law the National Defense Authorization Act for Fiscal Year 2014, amending Article 125 to cover only forcible sodomy and bestiality. In this case, however, the former version of Article 125 applies as the acts alleged occurred when it was in effect.

Specifications 1 and 2 of Charge III stated that the appellant "did, on board USS JOHN C STENNIS (CVN-74) . . . commit [oral and anal] sodomy with [MM3 TM] by force and without the consent of the said [MM3 TM]."[4]  Without objection from the appellant, the military judge instructed the members that non-forcible sodomy is an LIO of the offense of sodomy by force and without consent.  He advised as follows:

> The lesser included offense of non-forcible sodomy differs from the charged offense of forcible sodomy, in that non-forcible sodomy does not require you to be convinced beyond a reasonable doubt that the sodomy was committed by force and without the consent of the other person.  *However, in order to find the accused guilty of this lesser included offense*, you must find beyond a reasonable doubt both that the physical act of sodomy occurred *and* that it involved public behavior; an act of prostitution; persons who might be injured, coerced or who were situated in relationships where consent might not easily be refused; or of a unique military interest.[5]

For each of the two specifications, the members acquitted the appellant of forcible sodomy, but convicted him of non-forcible sodomy.  While the first four AOEs allege various infirmities of these convictions, they turn on one question: was it proper for the members to be instructed on and convict the appellant of non-forcible sodomy when such a conviction required proof beyond a reasonable doubt of facts not necessary for a forcible sodomy conviction and not pleaded in the specifications?  We answer this in the negative.

Whether an offense is an LIO is a question of law that we review *de novo*.  *United States v. Tunstall*, 72 M.J. 191, 193 (C.A.A.F. 2013) (citing *United States v. Girouard*, 70 M.J. 5, 9 (C.A.A.F. 2011)).  Absent objection at trial, we review for plain error, only granting relief if the appellant demonstrates: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused.  *Girouard*, 70 M.J. at 11.

To determine whether one offense is an LIO of another, we apply the elements test.  *Tunstall*, 72 M.J. at 194 (citing *United States v. Jones*, 68 M.J. 465, 468 (C.A.A.F. 2010)).

---

[4] Charge Sheet.

[5] Record at 1189-90 (emphasis added).

Under the elements test, one compares the elements of each offense. If all of the elements of offense X are also elements of offense Y, then X is an LIO of Y. Offense Y is called the greater offense because it contains all of the elements of offense X along with one or more additional elements.

*Jones*, 68 M.J. at 470.

The elements of forcible sodomy, as charged in this case, are: (1) that the appellant engaged in unnatural carnal copulation with MM3 TM; and (2) that the act was done by force and without the consent of MM3 TM. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 51b; Charge Sheet.

Non-forcible sodomy under the former version of Article 125, on the other hand, has one element: that the appellant engaged in unnatural carnal copulation with MM3 TM. *Id.*

Were we to end our analysis here, we would readily conclude—as indeed we did in *United States v. Useche*, 70 M.J. 657, 661 (N.M.Ct.Crim.App. 2012)—that these two offenses meet the elements test and that non-forcible sodomy is an LIO of forcible sodomy. The problem with this analysis is that since our decision in *Useche*, the United States Court of Appeals for the Armed Forces (CAAF) has clearly articulated that unnatural carnal copulation, standing alone, is not a crime under the former version of Article 125; further facts to be determined by the fact-finder are essential to a conviction for non-forcible sodomy. *United States v. Castellano*, 72 M.J. 217, 218 (C.A.A.F. 2013).

Specifically, to find an accused guilty of sodomy, the fact-finder must determine the presence of at least one *Marcum* factor. In *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004), the CAAF rejected a facial challenge to Article 125 in the wake of *Lawrence v. Texas*, 539 U.S. 558 (2003); it instead analyzed the constitutionality of the statute as applied to the appellant in that case by considering whether the sodomy involved any of the following: non-consensual activity; public conduct; minors; prostitution; persons who might be injured or coerced or who were situated in relationships where consent might not easily be refused; or "additional factors relevant solely

6

in the military environment that affect the nature and reach of *Lawrence* liberty interests[.]"  *Id.* at 205-07.

Subsequently, in an unpublished decision, a panel of this court addressed the assertion that *Marcum* factors amounted to *de facto* elements and therefore must be pleaded and submitted to the trier of fact.  *United States v. Castellano*, No. 201100248, 2012 CCA LEXIS 571, *13-14 (N.M.Ct.Crim.App. 26 Jun 2012).  Denying relief, the court reasoned that "[j]udicially created principles, such as the *Marcum* factors, are not elements of offenses[,]" *id.* at *14, but rather factors for a military judge to consider in making a legal determination, that is, the constitutionality of Article 125 as applied to a particular accused, *id.* at *14.

The CAAF rejected this analysis and reversed our decision in part and remanded the case.  *United States v. Castellano*, 72 M.J. 217, 220-23 (C.A.A.F. 2013).  It acknowledged that the *Marcum* factors are not elements of the offense, but pointed out that aggravating factors delineated by the President also are not elements, yet they "must be pleaded in the specification, instructed upon to the members, and determined by the trier of fact."  *Id.* at 222 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  Emphasizing the "critical significance" of the presence of a *Marcum* factor in distinguishing between criminal and non-criminal sodomy, it held that the trier of fact must determine whether a *Marcum* factor exists.  *Id.* at 221-22.

The CAAF's binding interpretation that *Marcum* factors represent additional facts necessary to prove a criminal act of sodomy——as opposed to factors to guide judges in making legal determinations——constrains us to conclude that, as a result, they must be pleaded in a sodomy specification.  First, "the *Due Process Clause* protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In Re Winship*, 397 U.S. 358, 364 (1970).  The existence of at least one *Marcum* factor is, as established, a fact necessary to constitute the crime of sodomy under the UCMJ.  Second, a specification, to be sufficient, must allege every element expressly or by necessary implication. *United States v. Fosler*, 70 M.J. 225, 229 (C.A.A.F. 2011).  Third, a fact that is essential to a determination of guilt or innocence to an offense, however it may be labeled, is the

7

"functional equivalent" of an element.  *Apprendi*, 530 U.S. at 494, n.19; *see also Castellano*, 72 M.J. at 221-22.

With this backdrop, we are now ready to address the LIO question.  The specifications alleged only one *Marcum* factor: by force and without consent.  Viewing the four corners of the specifications, no other factor is alleged, either expressly or by necessary implication.  We specifically reject the Government's contention that by pleading the *situs* of the offenses as aboard the USS JOHN C. STENNIS, the specifications necessarily implied that the alleged acts implicated a unique military interest.  While the Government may believe it intuitive that sodomy aboard a naval vessel meets the "unique military interest" *Marcum* factor, this is not the same as constitutionally adequate notice that the appellant's alleged acts of sodomy were criminalized not just because they were by force and without consent, but due to other, missing *Marcum* factors.

The offense of non-forcible sodomy thus required proof of essential facts absent from the forcible sodomy specification.  As charged, then, non-forcible sodomy was not an LIO of forcible sodomy and it was error to instruct or to find otherwise.

We also find the error was plain.  When making this determination, we consider the law at the time of the appeal.  *United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) ("'where the law at the time of trial was settled and clearly contrary to the law at the time of appeal – it is enough that an error be "plain" at the time of appellate consideration'") (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).  While it is true that the CAAF had decided *Castellano* by the date of trial in this case, that decision did not directly overturn *Useche*'s precedent that *Marcum* factors need not be pleaded in a specification; this we do today.  Viewing the matter now in light of our holding that non-forcible sodomy under the former version of Article 125 is not an LIO of forcible sodomy unless other applicable *Marcum* factors are pleaded and proven, the error in instructing otherwise is plain. *See Girouard*, 70 M.J. at 11 ("As noted above, negligent homicide is not an LIO of premeditated murder.  Therefore, instructing on negligent homicide as an LIO was error that was clear and obvious" (citation omitted)).

This, however, does not end our analysis.  "An error in charging an offense is not subject to automatic

8

dismissal, even though it affects constitutional rights. Rather, this Court tests for prejudice." *United States v. Wilkins*, 71 M.J. 410, 413 (C.A.A.F. 2012) (citations omitted). To determine whether there is prejudice, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *United States v. Humphries*, 71 M.J. 209, 215-16 (C.A.A.F. 2012) (quoting *United States v. Cotton*, 535 U.S. 625, 633 (2002)) (additional citation omitted).

On this record, we find prejudice. The appellant had no notice he was defending against any other theory that his alleged acts of sodomy were criminal other than that they were by force and without consent. This is in direct contrast to *Wilkins*, where "Appellant's due process rights were not violated because he was on notice of what he needed to defend against throughout his court-martial." 71 M.J. at 414 (citations omitted).

The focus throughout the trial remained on whether that element——by force and without consent——was met. For instance, in his opening statement, the trial defense counsel (TDC) stated, "When it comes down to it, [the appellant] is guilty of one thing, he was playing with fire. He was being stupid. He was having sex with different women onboard [sic] a ship. *Now, he's not charged with that*, that's not a -- having sex with multiple women is not a crime."[6] In closing, he argued that the appellant "is a player and that is *the only thing that he is guilty [of]*."[7] Such statements demonstrate the appellant was defending against an allegation that his acts of sodomy were criminal because they were by force and without consent——that but for that, the acts would not be criminal.

The trial counsel also focused exclusively on force as a theory of criminality. In his closing argument, he stuck to this theory: "These two specifications are pretty simple. Unnatural carnal copulation which The Manual for Courts-Martial defines as oral sex, anal sex, *by force and without consent*."[8] He explained the Government's theory of how the sodomy was by force, never mentioning a theory that

---

[6] Record at 688 (emphasis added).

[7] *Id.* at 1257 (emphasis added).

[8] *Id*. at 1234 (emphasis added).

it was also criminal even if consensual because it implicated a unique military interest——or any *Marcum* factor other than force.

The Government puts much stock in the fact that it was uncontroverted that the appellant committed the acts of sodomy aboard a naval vessel——that this *per se* means that the sodomy implicated a unique military interest.  While this perhaps would have been a strong theory of liability, it is not one the Government advanced in its charging document or in the course of the trial.  The uncontroverted fact that acts of sodomy occurred aboard a ship does not demonstrate the defense was on notice and prepared to defend against an allegation that the acts were criminal because they implicated a unique military interest or met some other unstated *Marcum* factor.  Constitutional notice requires more than a bald assertion that such a connection is intuitive.

We find neither evidence of notice of the missing *Marcum* factors in the record nor that they were "essentially uncontroverted," *Humphries*, 71 M.J. at 215. Accordingly, the findings of guilty to both specifications of Charge III and to Charge III must be set aside.

## II. Use of Charged Misconduct as Propensity Evidence

The appellant next contends that the military judge erred when, over defense objection, he ruled that the charged sexual assaults could be used for any relevant purpose under MILITARY RULE OF EVIDENCE 413, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), including whether the appellant had a propensity to commit sexual assaults.  We disagree.

*Background*

The Government provided the TDC timely notice of its intent to use evidence of the charged sexual assaults for all relevant purposes under MIL. R. EVID. 413.  In response, the TDC filed a motion to sever, arguing that evidence in the case of MM3 TM was in no way admissible to prove allegations related to ABE2 MH and vice versa, and that impermissible spillover would occur if both sets of charges were tried together.  The military judge denied the motion to sever, ruled the evidence was admissible for all relevant purposes under MIL. R. EVID. 413, and agreed to provide a tailored spillover instruction.

During trial, the military judge instructed the members that if they determined by a preponderance of the evidence that

10

sexual assault offenses pertaining to MM3 TM occurred, they could consider the evidence of those offenses for its bearing on any matter to which it was relevant in relation to the charges and specifications regarding ABE2 MH——and vice versa. Relevant matters, he explained, included, *inter alia*, "its tendency, if any, to show the accused's propensity or predisposition to engage in sexual assault."[9]

He then provided the following spillover instruction:

You may not, however, convict the accused of a charge or specification solely because you believe he committed another charge or specification or solely because you believe that the accused has a propensity or predisposition to engage in sexual assault. In other words, you cannot use the evidence of one charge or specification to overcome a failure of proof in the Government's case for another charge or specification, if you perceive any to exist.

The accused may be convicted of an alleged offense only if the prosecution has proven each element beyond a reasonable doubt. Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one sexual assault creates no inference that the accused is guilty of any other sexual assault. However, it may demonstrate that the accused has a propensity to commit that type of offense. The prosecution's burden of proof to establish the accused's guilt beyond a reasonable doubt remains as to each and every element of each offense charged. Proof of one charged offense carries with it no inference that the accused is guilty of any other charged offense.[10]

The TDC, having lost his motion to sever, did not object to these instructions and, in fact, upon his request, the military judge repeated them after closing arguments.

*Law*

We review a military judge's decision to admit evidence under MIL. R. EVID. 413 for an abuse of discretion. *United States*

---

[9] *Id.* at 1210. This language tracked the pattern instruction contained in the Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9 (1 Jan 2010).

[10] *Id.* at 1210-11.

*v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). Whether members were properly instructed and whether application of a Military Rule of Evidence was constitutional are questions of law that we review *de novo*. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002); *see also United States v. Wright,* 53 M.J. 476 (C.A.A.F. 2000).

MIL. R. EVID. 413(a) provides:

In a court-martial proceeding for a sexual offense, the military judge may admit evidence that the accused committed any other sexual offense. The evidence may be considered on any matter to which it is relevant.

"[I]nherent in M.R.E. 413 is a general presumption in favor of admission of evidence." *United States v. Berry* 61 M.J. 91, 95 (C.A.A.F. 2005) (citing *Wright*, 53 M.J. at 482–83).

There are three threshold requirements before evidence may be admitted under MIL. R. EVID. 413:

1. The appellant is charged with an offense of sexual assault;

2. The evidence proffered is evidence of the appellant's commission of another offense of sexual assault; and

3. The evidence is relevant under MIL. R. EVID. 401 and 402.

*Wright*, 53 M.J. at 482.

If the evidence passes those threshold requirements, the military judge must then apply the balancing test under MIL. R. EVID. 403, considering the following factors: strength of the proof of the prior act; probative weight of the evidence; potential to present less prejudicial evidence; possible distraction of the fact-finder; time needed to prove the prior conduct; temporal proximity; frequency of the acts; presence or lack of intervening circumstances; and relationship between the parties. *Id.* The military judge should make detailed findings on the record; failure to "sufficiently articulate his balancing on the record" will result in his evidentiary ruling receiving less deference. *Berry,* 61 M.J. at 96.

*Analysis*

The appellant asserts that MIL. R. EVID. 413 "was never meant to allow charges before a court-martial to support each other's

12

proof"[11] and that doing so in his case violated his constitutional rights to presumption of innocence and due process.  We disagree.

First, the plain language of MIL. R. EVID. 413—allowing "evidence that the accused committed *any other sexual offense*"— is broad and betrays no exception for charged misconduct.  We are not a rulemaking body and, even were we inclined to find such an exception prudent, we are bound to apply the Rule as written, not as may be desired, unless it is unconstitutional. *Wright*, 53 M.J. at 481.

Second, we see nothing more prudent or fair about a rule that would prohibit evidence from being considered under MIL. R. EVID. 413 if it pertains to charged offenses, but allow it if the evidence is too old or too weak to be charged or if the Government presents it twice in two separate courts-martial.

Third, we reject the argument that MIL. R. EVID. 413 as applied to charged misconduct is unconstitutional.  "The presumption is that a rule of evidence is constitutional unless lack of constitutionality is clearly and unmistakably shown." *Id.* (citations omitted).  The appellant has pointed us to no precedent where a sister or superior court has interpreted MIL. R. EVID. 413 to reach only uncharged misconduct.  Instead, he points to *dictum* from a panel of this court in *United States v. Myers*, 51 M.J. 570 (N.M.Ct.Crim.App. 1999).  There, in analyzing the use of charged misconduct under MIL. R. EVID. 413, the panel set aside the findings of guilty due to the military judge's failure to give a spillover instruction.  *Id.* at 583.  Along its way to this conclusion, the panel stated:

> We can find no reported case in which Mil. R. Evid. 413 was held to allow one set of **alleged** sexual assault offenses to show an accused's "propensity" to have committed a different set of **alleged** sexual assault offenses (and vice versa), when both sets of offenses were joined together at one trial where the accused was cloaked in the presumption of innocence with respect to all. Indeed, we believe this case presents a constitutional quagmire that the drafters of Mil.  R. Evid. 413 probably never envisioned.

*Id.* at 581.

We do not agree with this *dictum*, but more importantly, it preceded the CAAF's decision in *Wright*.  There, the evidence of

---

[11] Appellant's Brief at 27.

the "other sexual offense" was indeed evidence of charged misconduct.  Yet the CAAF rejected the constitutional challenges to the Rule and went so far as to state, "This is the type of case in which this evidence was designed to be admitted." *Wright*, 53 M.J. at 483.

The application of MIL. R. EVID. 413 to misconduct——charged or uncharged——is subject to the same procedural safeguards in place to protect the rights of the accused.  The military judge must apply the *Wright* factors and undertake a rigorous balancing test before allowing evidence of charged misconduct to be used to demonstrate propensity.  Additionally, a properly crafted spillover instruction protects the presumption of innocence and ensures that the prosecution must prove each element of each offense beyond a reasonable doubt.  *Id.*  As the CAAF explained, this does not offend the Constitution: "'Individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it.  The sum of an evidentiary presentation may well be greater than its constituent parts.'"  *Id.* (quoting *Huddleston v. United States*, 485 U.S. 681, 691 (1988)).

Next, the appellant argues that the military judge erred by not properly applying the procedural safeguards necessary to vet MIL. R. EVID. 413 evidence.  We disagree.

"When a military judge articulates his properly conducted M.R.E. 403 balancing test on the record, the decision will not be overturned absent a clear abuse of discretion." *Solomon*, 72 M.J. at 180 (citation omitted).  The military judge in this case articulated his ruling on the record, both orally and in writing, and provided detailed analysis.  First, he addressed each of three threshold determinations and found them met.  The appellant concedes that the two sets of charged offenses "facially meet these criteria."[12]

He then conducted the MIL. R. EVID. 403 balancing test, considering each of the factors under *Wright*.  The appellant asserts the military judge erred when determining the first factor: strength of proof of the prior act.  In his written findings, the military judge stated that "[t]he 'prior acts' in this case will be proven by the alleged victims' testimony which will be subject to cross examination by defense counsel and questions by the members[.]"[13]  The appellant avers this

---

[12] *Id.* at 29.

[13] Appellate Exhibit LIV at 2.  When orally issuing his ruling, he clarified "or should be proven."  Record at 357.

14

effectively bypassed MIL. R. EVID. 403 and this factor was not determined until the completion of the Government's case.

We find that this did not amount to an abuse of discretion. The military judge was not merely deferring to see what the evidence would be at trial; part of the submissions he considered were statements and prior testimony of both complaining witnesses as well as other evidence. In conducting his balancing, the military judge was entitled to consider that the evidence was already coming in as evidence of charged misconduct and would be further subject to the crucible of trial. That properly was a factor in assessing the danger of unfair prejudice; the military judge indicated his findings instructions on the proper use of the evidence could be modified if the evidence did not pan out. Even assuming *arguendo* the military judge's articulation of the first prong was not entirely artful, that in no way invalidates his determination that the evidence met the balancing test and was admissible under MIL. R. EVID. 413. Accordingly, we find the military judge did not abuse his discretion by allowing evidence of the charged offenses to be considered under MIL. R. EVID. 413.

Finally, we find that the military judge's instructions on consideration of the evidence under MIL. R. EVID. 413, the presumption of innocence, and spillover were correct and sufficed to ensure the evidence was considered in its proper context and that the appellant was afforded a fair trial.

## III. Prosecutorial Misconduct

The appellant next avers the trial counsel (TC) committed prosecutorial misconduct when, during rebuttal argument on the merits, he purportedly: (1) "accused the members of 'victim blaming' if they listened to the defense"[14]; (2) offered his personal opinion; (3) mischaracterized the evidence; and (4) improperly bolstered MM3 TM's credibility by mischaracterizing her testimony. We disagree.

*Background*

In support of his contentions, the appellant highlights the following remarks made by the TC during rebuttal argument on the merits:

---

[14] Appellant's Brief at 35.

- Defense counsel is right, you saw her [MM3 TM], if that's a lie, we'll see her next year at the academy awards. Frankly, if that's a lie she's got to be a sociopath to invoke her mom like that.[15]

- Got to talk about victim blaming. Do you ever wonder why victims of sexual assault are unsure about coming forward? . . . . You saw defense counsel get up here, use words like, whore, slut, liar, adulterer, crazy, vindictive. And that was just on cross-examination. Then we've got moral transgressions, dirty sex, they look like children. She wants to be the judge, the jury. She's using her sex in feminine ways to get ahead. These two women are staying safe behind the word, victim.[16]

- They offer you a ton of reasons why [ABE2 M.H.] might be lying. I kind of lost count . . . . They gave you a lot of them. They threw them all up at the wall and they said well, I hope the members pick one. But none of them are any good. They're hoping you'll just be swayed by sheer creativity and numbers.[17]

- Asking MM3 [TM], why are you looking at trial counsel? Well, she actually said, I was actually looking at my victim advocate. She's the one that's helping get me through this, just seeing her face for support. That's what MM3 [TM] was doing and she told you that. But God forbid, God forbid if this— if any of these women look for support, if they look for help. It is a classic effort to shift the blame, shift the blame on them, blame the victim. Belittle them, what the accused did was so bad, it was so unwanted. Belittle their pain, belittle it and just tell them it doesn't matter. Because as far as the accused is concerned, he's the victim here. . . . Because he's a predator and he's a rapist and he's using them to cover his own

---

[15] Record at 1269.

[16] *Id.* at 1285.

[17] *Id.* at 1275.

misdeeds.  He's calling them crazy, lying, whores, adulterers, sluts.[18]

Shortly after the final comment above, the TDC interjected to request a hearing outside the presence of the members.  The appellant then objected to the TC's argument and moved for a mistrial, asserting he had mischaracterized the evidence regarding calling the complaining witnesses names and regarding whom MM3 TM was looking at during cross-examination.  The military judge denied a mistrial, but provided the following curative instruction at the end of argument:

Members, you have just heard an explanation of the facts by counsel for both parties as they view them. I remind you, again, to bear in mind that the arguments of counsel are not evidence.  Argument is made by counsel in order to assist you in understanding and evaluating the evidence.  Anything counsel has said that you feel conflicts with the evidence or with the instructions I have given you, you should follow the instructions I have given you and the evidence as you weigh it and as you recall it.[19]

*Law*

When an appellant fails to object to alleged prosecutorial misconduct at trial, we review for plain error, only granting relief if the appellant carries his burden of demonstrating: (1) there is error; (2) that is clear or obvious; and, (3) that materially prejudiced a substantial right of the accused. *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005).

When an appellant objects to alleged prosecutorial misconduct at trial, we review for prejudicial error.  *United States v. Hornback*, 73 M.J. 155, 159 (C.A.A.F. 2014).  A military judge's failure to grant a motion for mistrial is reviewed for an abuse of discretion, bearing in mind that a mistrial is "a drastic remedy to be used only sparingly to prevent manifest injustice."  *United States v. Thompkins*, 58 M.J. 43, 47 (C.A.A.F. 2003) (citation omitted).

Prosecutorial misconduct occurs when a prosecutor "'oversteps the bounds of that propriety and fairness which

---

[18] *Id.* at 1286.

[19] *Id.* at 1293.

should characterize the conduct of such an officer in the prosecution of a criminal offense.'" *Fletcher*, 62 M.J. at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). "Prosecutorial misconduct can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996) (citing *Berger*, 295 U.S. at 88).

"It is improper for a trial counsel to interject herself into the proceedings by expressing a personal belief or opinion as to the truth or falsity of any testimony or evidence." *Fletcher*, 62 M.J. at 179 (citations and internal quotation marks omitted). Ways a prosecutor may run afoul of this rule include giving personal assurances that the Government's witnesses are telling the truth or offering "substantive commentary on the truth or falsity of the testimony and evidence." *Id.* at 180 (citation omitted). A prosecutor also must confine his argument to the "'evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)).

*Analysis*

We find that by failing to object at trial to the first two complaints (regarding "victim blaming" and personal opinion), the appellant forfeited these claims and that he has not demonstrated plain error. First, it is clear from the context of the TC's rebuttal that he was, in response to the defense counsel's argument, squarely accusing the *defense*, not the members, of victim blaming. He argued the defense was attempting to shift blame to the victims in an effort to divert attention from the appellant's actions. This was not an unreasonable argument: the TDC had just spent much of his rather lengthy closing excoriating the complaining witnesses.

Second, while some of the TC's comments taken in isolation may have approached "substantive commentary on the truth or falsity of the testimony and evidence," *Fletcher*, 62 M.J. at 180, we think it far from *plain* or *obvious* that, taken in context, he was offering a personal belief or opinion. His remarks were limited to rebuttal argument and responded to opposing counsel's argument. For instance, the TDC had spent some time discussing "the way [MM3 TM] testified," adding, "I'll give you this, I did believe it was a little unfair to start

18

with these really terrible stories of her upbringing and her [deceased] mother."[20]  He accused the Government of "cueing her up to get all her emotions going" and argued that while ABE2 MH had her moments, "the academy award goes to [MM3 TM]."[21]  He also commented, "We're not in a high school cafeteria."[22]

Finally, while the appellant attempts to draw an analogy to *Fletcher*, the relatively brief, isolated comments during rebuttal argument in this case——including the commentary that none of the defense explanations about ABE2 MH's motive to fabricate were "any good"——do not even approach the repeated, "blatant" interjection of personal beliefs and opinions found to be prejudicial error in *Fletcher*.  62 M.J. at 181.  Given the context, we find that the trial counsel's comments did not cross the "'exceedingly fine line which distinguishes permissible advocacy from improper excess.'"  *Id.* at 183 (quoting *United States v. White*, 486 F.2d 204, 207 (2d Cir. 1973)).

Moving to the assertions that were the subject of the motion for mistrial, the appellant argues the TC misled the members regarding words the TDC used to describe the victims and improperly bolstered MM3 TM's credibility by mischaracterizing where she was looking during cross-examination.  We first note that, contrary to the appellant's assertion, the TDC did use the words "whores" and "sluts" when he asked ABE2 MH, "I mean, you didn't want to be known as a slut or a whore around the ship, right?"[23]  Further, in terms surely not lost on the members——nor on us——TDC unmistakably implied the remaining descriptors in numerous comments we find unnecessary to catalog here.

The TDC was, however, correct that the TC erred by arguing that MM3 TM, when confronted about whether she was looking at the TC, responded she was looking at her victim advocate.  It was, in fact, during direct examination that she alluded to looking at her victim advocate.  During cross, she stated she was merely scanning the room.  The appellant complains this was inaccurate and improperly bolstered MM3 TM's credibility.

Both of these objections, however, were properly addressed by the military judge; we find no abuse of discretion in his

---

[20] *Id.* at 1242.

[21] *Id.*

[22] *Id.* at 1243.

[23] *Id.* at 760.

decisions to provide a curative instruction and to deny a mistrial.

Furthermore, even were we to assume error *arguendo* for either the unobjected to or objected to comments, we find no prejudice. In assessing whether there was prejudice from prosecutorial misconduct, we examine three factors: (1) the severity of the misconduct; (2) curative measures taken; and (3) the strength of the Government's case. *Fletcher*, 62 M.J. at 184.

The severity was low. In a lengthy trial, the appellant points to relatively isolated comments covering a small fraction of the trial and restricted to rebuttal argument. The members, who deliberated for over four hours, made findings that demonstrate their ability to make an independent assessment of the evidence to reach their own conclusions. There is no evidence of the TC failing to abide by the military judge's rulings. As a curative measure, the military judge instructed the members to disregard any arguments of counsel that conflicted with the evidence or the judge's instructions. The Government's case for those offenses resulting in a conviction was reasonably strong. Given all this, we are confident in the members' ability to adhere to the military judge's instructions and to put counsel's arguments——particularly those about where witnesses were looking while testifying and what names the parties called each other——in their proper context. Finally, it must be pointed out that the members acquitted the appellant of all allegations of forcible conduct against MM3 TM, so any purported attempts to bolster her credibility apparently had no effect.

## IV. Sentence

Having set aside the findings as to Charge III and both of its specifications, we next consider whether we can reassess the sentence. A "'dramatic change in the penalty landscape' gravitates away from the ability to reassess" a sentence. *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (quoting *United States v. Riley*, 58 M.J. 305, 312 (C.A.A.F. 2003)). By setting aside the findings of guilty to the sodomy specifications, the maximum period of confinement goes from 14 years down to only four. MCM, Part IV, ¶ 16e(1) and App. 28, ¶ 45f(7). As noted, the appellant's sentence as approved includes seven years' confinement. Our action on findings thus dramatically changes the penalty landscape and we cannot

20

reliably determine what sentence the members would have imposed. *Buber*, 62 M.J. at 479-80.

## Conclusion

The findings of guilty to Charge III and the specifications thereunder and the sentence are set aside. Charge III and its specifications are dismissed. The remaining findings of guilty are affirmed. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate CA with a rehearing on sentence authorized. Art. 66(d), UCMJ.

Judge HOLIFIELD and Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court

21