# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

## No. 200700143

———————————————

## CHARLES M. BURLESON

Petitioner

v.

## UNITED STATES OF AMERICA

Respondent

———————————————

Review of Petition for Extraordinary Relief in the Nature of a Writ of Error *Coram Nobis* and Writ of *Audita Querela*

For Petitioner: Commander Brian L. Mizer, JAGC, USNR.
For Respondent: Lieutenant George R. Lewis, JAGC, USN;
Lieutenant Megan P. Marinos, JAGC, USN.

———————————————

Decided 26 February 2018

———————————————

Before MARKS, JONES, and WOODARD, *Appellate Military Judges*

———————————————

## PUBLISHED OPINION OF THE COURT

———————————————

WOODARD, Judge:

This case is before us for a fourth time. The petitioner, a former service member, seeks extraordinary relief from this court in the nature of a writ of error *coram nobis* or, in the alternative, in the nature of a writ of *audita querela*, under the All Writs Act, 28 U.S.C. § 1651(a). The petitioner avers that his appellate defense counsel were ineffective in representing him by failing to raise as error MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 413, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2005 ed.) issues raised at trial.[1] Alternatively, he asserts that even if his appellate defense counsel were not ineffective and no writ of error *coram nobis* should issue, a

———————————————

[1] Petition of 7 Jun 2017 at 1.

writ of *audita querela* should issue to prevent continued enforcement of his conviction—and the resulting sex offender registration requirements—in light of the Court of Appeals for the Armed Forces's (CAAF) decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016).[2] The petitioner claims *Hills* should apply retroactively to his case.[3]

Having considered the petitioner's prayer for relief, the briefs submitted, and the case law, we find that the petitioner has not established a clear and indisputable right to the relief requested under either writ. Accordingly, the petition is denied.

## I. BACKGROUND

In May 2006, a general court-martial composed of officer and enlisted members convicted the petitioner, contrary to his pleas, of rape,[4] assault consummated by a battery, housebreaking, and indecent assault in violation of Articles 120, 128, 130, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 928, 930, and 934 (2005). He was sentenced to 20 years' confinement, total forfeitures, reduction to paygrade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence as adjudged and, with the exception of the dishonorable discharge, ordered it executed.

On direct appeal, after considering the assignment of errors (AOE) raised on the petitioner's behalf by his appellate defense counsel, we affirmed the findings and sentence. *United States v. Burleson*, No. 200700143, , 2008 CCA LEXIS 386, unpublished op. (N-M. Ct. Crim. App. 21 Oct 2008). The petitioner appealed to the CAAF, who dismissed the petitioner's conviction for indecent assault[5] and remanded the case to us to either conduct a sentence reassessment or order a rehearing on the sentence. *United States v. Burleson*, 69 M.J. 165 (C.A.A.F. 2010) (summary disposition). The CAAF, however, affirmed this court's decision "in all other respects"—thus affirming

---

[2] In *Hills*, the CAAF held that it was error for the finder of fact to consider evidence of the accused's commission of one sexual assault offense as evidence of an accused's propensity to commit another sexual assault, pursuant to MIL. R. EVID. 413, if both alleged sexual assaults are charged at the same court-martial and the accused has pled not guilty to the sexual assaults. *Hills*, 75 M.J. at 356.

[3] Petition at 25.

[4] For the purpose of this opinion, the terms rape and sexual assault are used synonomously.

[5] The petitioner had been convicted of the indecent assault as a lesser included offense of rape under Article 120, UCMJ; that conviction was set aside by CAAF which held in *United States v. Jones*, 68 M.J. 465 (C.A.A.F. 2010) that indecent assault is not a lesser included offense of rape.

the petitioner's convictions for rape, assault consummated by battery, and housebreaking. *Id.*

On remand from the CAAF, we did not conduct a sentence reassessment and the record was instead remanded to the CA with a rehearing on sentence authorized. At his resentencing proceeding, pursuant to a post-trial agreement, the petitioner elected to be sentenced by the military judge, who sentenced him to 12 years' confinement, reduction to paygrade E-1, and a dishonorable discharge. The CA approved the sentence as adjudged, but suspended all confinement in excess of 10 years in accordance with the post-trial agreement and, except for the dishonorable discharge, ordered the sentence executed.

Following the petitioner's resentencing, this case was submitted to us with no additional AOEs. As the remaining findings had been previously affirmed by the CAAF, we examined the record of the resentencing proceedings, concluded the sentence was correct in law and fact and that no error materially prejudicial to the substantial rights of the petitioner had occurred during the resentencing proceeding, and affirmed the sentence as approved by the CA. *United States v. Burleson*, No. 200700173, 2011 CCA LEXIS 682, unpublished op. (N-M. Ct. Crim. App. Apr. 28, 2011) (per curiam). The petitioner did not seek further review of his case by the CAAF in accordance with RULES FOR COURTS-MARTIAL (R.C.M.) 1204, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), nor did he petition for a new trial in accordance with R.C.M. 1210.

The CAAF decided *Hills* on 27 June 2016.[6] Almost one year later, the petitioner filed this petition for extraordinary relief.

---

[6] We acknowledge that if the petitioner's case were to come before us today on direct review, we would be bound by our superior court's holding in *Hills*. For the purposes of this petition, we note the military judge in petitioner's case did not repeat the precise instructional error in *Hills*. Instead, the military judge, without specifying a burden of proof, instructed the members that:

> evidence that the accused committed the rape of [CEG] as alleged in Specification 1 of Charge I may be considered by you as evidence of the accused's propensity, if any, to commit the rape alleged in Specification 2 of Charge I. You may not, however, convict the accused of one offense merely because you believe he committed this other offense or merely because you believe he has a propensity to commit sexual assault. Each offense must stand on its own and proof of one offense carries no inference that the accused is guilty of any other offense. In other words, proof of one rape creates no inference that the accused is guilty of any other rape. However, it may demonstrate that the accused has a propensity to commit that type of offense. The prosecution's burden of proof to establish the accused's

## II. DISCUSSION

### A. Jurisdiction

In order to determine whether we can grant the relief requested by the petitioner we must first determine whether we have the authority to act upon his request. The All Writs Act states that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651(a). *See also United States v. Denedo*, 556 U.S. 904, 911 (2009); R.C.M. 1203(b), Discussion. "'[M]ilitary courts, like Article III tribunals, are empowered to issue extraordinary writs under the All Writs Act.'" *LRM v. Kastenberg*, 72 M.J. 364, 367 (C.A.A.F. 2013) (quoting *Denedo*, 556 U.S. at 911) (alteration in original). However, the All Writs Act does not serve as "an independent grant of jurisdiction, nor does it expand [our] existing statutory jurisdiction." *Id.* (citation omitted). Therefore, in order to grant the petitioner's prayer for relief, "the All Writs Act requires two determinations: (1) that the requested writ is in aid of [our] existing jurisdiction; and (2) the requested writ is necessary or appropriate." *Id.* at 367-68 (quoting *Denedo v. United States*, 66 M.J. 114, 119 (C.A.A.F. 2008)) (internal quotation marks omitted).

As a court established by an act of Congress, we conclude that we can consider the petitioner's prayer for relief. In doing so, we are mindful that "judgment finality is not to be lightly cast aside;" and we must be cautious and limit the granting of extraordinary writ relief to only "extreme cases." *Denedo*, 556 U.S. at 916. Because the petitioner is asking this court to issue an extraordinary writ, he must establish a "clear and indisputable right to the requested relief." *Denedo*, 66 M.J. at 126 (citing *Cheney v. United States Dist. Court,* 542 U.S. 367, 381 (2004)).

We first consider the writ of error *coram nobis*.

### B. Writ of error *coram nobis*

The petitioner seeks *coram nobis* relief alleging his appellate defense counsel were ineffective. A writ of error *coram nobis* is extraordinary relief available only under exceptional circumstances where an error is based upon facts that were not apparent to the court during the original consideration of

---

guilt beyond a reasonable doubt, remains as to each and every element of each offense charged.

Record at 1157.

the case and that may change the result. *United States v. Frischholz*, 36 C.M.R. 306, 309 (C.M.A. 1966). The alleged factual errors must be "of the most fundamental character, that is, such as rendered the proceeding itself irregular and invalid." *United States v. Morgan*, 346 U.S. 502, 509 n.15 (1954) (citations and internal quotation marks omitted). The Supreme Court has declared that writs of *coram nobis* may be issued to correct factual and legal errors, of the most fundamental character, such as deprivation of the right to effective assistance of counsel. *Denedo*, 556 U.S. at 911.

In *Denedo*, the CAAF established standards applicable to this court's review of claims raised via a writ of error *coram nobis* petition. It adopted the two-tiered evaluation used by Article III courts. *Denedo*, 66 M.J. at 126. In the first tier, the petitioner must satisfy six threshold requirements:

> (1) The alleged error is of the most fundamental character;
>
> (2) no remedy other than *coram nobis* is available to rectify the consequences of the error;
>
> (3) valid reasons exist for not seeking relief earlier;
>
> (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment;
>
> (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and
>
> (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Id.* at 126-27. Only if the petitioner satisfies all six threshold requirements do we then turn to the second tier, the evaluation of the ineffective assistance of counsel claim. *Id.* at 126. We conclude that the petitioner has failed to satisfy two of the six *Denedo* threshold requirements for *coram nobis* review— requirements four and five. Accordingly, we need not address the second tier's evaluation of his ineffective assistance of counsel claim. First, we conclude that the writ *does* seek to reevaluate previously considered legal issues—the application of MIL. R. EVID. 413 to evidence admitted at trial and the MIL. R. EVID. 413 instructions given for consideration of that evidence. Second, because we conclude that *Hills* announced a "new rule" of criminal procedure that does not apply retroactively, we also conclude that the petitioner has not presented any new information that we can properly consider in order to grant *coram nobis* review.

*1. Petitioner seeks reevaluation of previously considered legal issues*

The petitioner's claim, that his appellate defense counsel were ineffective, rests upon his assertion that "[d]espite [his] objection at trial, preserving the

error, his appellate defense counsel *never raised the* MIL. R. EVID. *413 issue* on direct review[.]"[7] We find to the contrary. His counsel did raise the MIL. R. EVID. 413 issues on direct appeal before both this court and the CAAF.

At trial, the petitioner was charged with raping CEG in July 2005, raping KMR in November 2005, and with housebreaking related to the rape of KMR. The petitioner was also charged with an unrelated physical assault of a male service member.

In the petitioner's case, the government provided the defense MIL. R. EVID. 404(b) and 413 notice of its intent to: (1) use evidence of one charged sexual assault offense as propensity evidence of another charged sexual assault offense; (2) introduce statements the petitioner made to CEG that he had "done this [sexually assault women] four other times"; and (3) introduce this evidence to show "motive, opportunity, intent, knowledge, and/or absence of mistake or accident."[8] After receiving the notice, the petitioner's trial defense counsel filed a motion in limine seeking to "prevent the government from presenting evidence of one charged sexual assault to prove another under [MIL. R. EVID.] 413."[9] In the motion, trial defense counsel argued that "[t]he use of evidence of one charged [sexual assault] to prove a separate but concurrently-charged [sexual assault] raises serious constitutional issues."[10] He further argued "that the proffered evidence [did] not qualify as evidence of a *prior* sexual assault, the proffered evidence [was] not legally relevant under [MIL. R. EVID.] 401 and 402, and whatever relevance the evidence [had was] substantially outweighed by its prejudicial value under [MIL. R. EVID.] 413."[11] The motion also sought to prevent the trial counsel from presenting evidence that the petitioner had told CEG he had committed several other prior uncharged sexual assaults.

The trial defense counsel also filed a motion to sever the two charged sexual assault offenses. In this motion, the trial defense counsel argued the same constitutional concerns he had argued in the MIL. R. EVID. 413 motion, stating, "[w]hen separate crimes are joined, . . . fundamental concern for due process prevents accumulation of evidence of the various [sexual assaults] charged to find guilt when, if considered separately, they would not so find .[12] He also argued the danger of the members misusing the MIL. R. EVID. 413

---

[7] Petition at 1 (emphasis added).

[8] Appellate Exhibit (AE) XXIV at 10.

[9] AE XXX at 1.

[10] *Id.* at 3 (citation and internal quotation marks omitted).

[11] *Id.* at 4.

[12] AE XXIV at 3.

propensity evidence by applying a "lightning cannot strike twice rationale" to convict.[13] Finally, the trial defense counsel addressed the same MIL. R. EVID. 413 issues that were raised in these two motions in his petition for a mistrial after it was discovered that extraneous information which had not been admitted into evidence was inadvertently published to and considered by the members during their deliberations on findings.[14] Accordingly, we conclude, as a preliminary matter, that the trial defense counsel did raise MIL. R. EVID. 413 issues at trial in his three motions—thus properly preserving any potential issue on the record.

During the petitioner's first round of appellate review, he was represented, at different times, by three military appellate counsel, along with an experienced civilian appellate defense counsel. The AOEs raised for this court's consideration by the petitioner's initial appellate defense team included:

> a. In light of the MIL. R. EVID 606 violation, the military judge abused his discretion when he found that the government proved that the erroneous publication of unadmitted evidence to the members was harmless beyond a reasonable doubt.
>
> b. The MIL. R. EVID. 413 propensity instruction given by the military judge resulted in prejudice from the previous issue spilling over into deliberations and findings of guilt of rape.
>
> c. The military judge committed prejudicial error by denying the defense motion to sever the charged sexual assault specifications.[15]

In their briefs, counsel addressed the MIL. R. EVID. 413 concerns raised at trial, the severance motion, and the petition for mistrial. The MIL. R. EVID. 413 propensity instruction and the prejudice arguably resulting from the use and misuse of sexual assault propensity evidence by the members in reaching their findings were central themes throughout the appellate defense counsel's briefs.[16]

In addressing the AOEs raised by appellate defense counsel, this court quoted the MIL. R. EVID. 413 propensity instruction, citing it as one of several factors for determining that the improperly considered extraneous material had no spillover effect or impact on the members' decision to convict the

---

[13] *Id.* at 6.

[14] AE XCIV.

[15] Appellant's Brief of 12 Feb 2008.

[16] Appellant's Brief and Appellant's Reply Brief of 19 May 2008, n1.

petitioner of rape. We concluded that "[t]he members carefully reviewed the evidence, and rendered a verdict based on that evidence and *not on the appellant's propensity to commit sexual assaults.*" *Burleson*, 2008 CCA LEXIS 386, at *17 (emphasis added).

Following our decision, appellate defense counsel then petitioned the CAAF for review of the same AOEs listed above.[17] The arguments made by the appellate defense counsel to the CAAF were essentially the same as those made to this court. Although the petitioner's initial appellate defense team did not present the same error identified in *Hills*,[18] we find that the manner in which they addressed the admission of MIL. R. EVID. 413 evidence, the MIL. R. EVID. 413 instruction given, and the possible misuse of the propensity evidence by the members, placed the legal issues later addressed in *Hills* directly before this court and the CAAF for consideration.

For reasons not developed in the record, the CAAF granted review on a different issue not previously raised by the appellate defense counsel.[19] The appellate defense counsel briefed this issue,[20] and the CAAF set aside the indecent assault conviction and the sentence but affirmed our decision "in all other respects"—thus affirming the petitioner's assault consummated by battery, rape, and housebreaking convictions. *Burleson,* 69 M.J. at 165. We declined to reassess the sentence and ordered the record remanded to the CA with a rehearing on sentence authorized.

Prior to the rehearing, the petitioner's trial defense team filed a number of motions, to include a motion for reconsideration of the mistrial petition which had been denied at his previous trial.[21] The counsel argued that in the petitioner's original court-martial the government had linked the evidence of two charged sexual assault offenses through a propensity argument, and the military judge had reinforced that linkage through his MIL. R. EVID. 413 instruction. They reasoned that because the CAAF had overturned the

---

[17] Appellant's Supplement to Petition for Grant of Review of 15 Jan 2008 at ii.

[18] Again we note the military judge in petitioner's case did not repeat the precise instructional error in *Hills*. *See* n.4 *supra*.

[19] The issue on which the CAAF granted review was whether, at the time of the petitioner's court-martial, an indecent assault charged as a violation of Article 134, UCMJ, was an offense necessarily included in Article 120 (rape), UCMJ. *United States v. Burleson*, 68 M.J. 163 (C.A.A.F. 2009) (summary disposition).

[20] Appellant's Brief of 20 Aug 2009.

[21] The motions submitted to the court prior to petitioner's resentencing hearing included a motion for reconsideration of the motion for mistrial (AE CIX), two motions in limine to exclude evidence (AEs CX and CXI), and a motion for appropriate relief for unlawful punishment under Article 13, UCMJ (AE CXII).

indecent assault conviction, the reliability of his remaining rape conviction was now very much in question and was likely due to the now-invalid propensity argument.[22] Trial defense counsel further argued that, unless the court granted the defense motion for reconsideration of the petition for mistrial, the petitioner would be sentenced for a rape conviction derived from evidence that was never properly evaluated under MIL. R. EVID. 413 or 403.[23]

The petitioner then leveraged the petition for mistrial reconsideration motion, as well as other motions filed prior to the resentencing hearing, to obtain a post-trial agreement with the CA. As consideration for the agreement, the petitioner agreed, among other things, to withdraw all pending motions and be sentenced by military judge alone.[24] In return, the CA agreed to suspend all confinement adjudged in excess of 10 years.[25]

Following the resentencing proceeding, the petitioner's case was submitted to this court for the third time and a second appellate review. His appellate counsel submitted the petitioner's case on its merits, without alleging any additional assignments of error.[26]

Although the petitioner's second appellate defense counsel did not rebrief the previously raised, litigated, and considered MIL. R. EVID. 413 issues following the resentencing proceeding, the fact remains that his initial appellate defense team had raised these issues. Furthermore, at his resentencing proceeding the petitioner waived the issues for the benefit of his post-trial agreement.

"[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (additional citation and internal quotation marks omitted). Waived issues are not normally reviewable on appeal as "a valid waiver leaves no error . . . to correct on appeal." *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (quoting *United States v. Pappas*, 409 F.3d 828, 830 (7th Cir. 2005)) (additional citation and internal quotation marks omitted). Although, the plenary review mandate of Article 66(c), UCMJ requires "the CCAs . . . to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error," in this case there was not only no error to correct under the

---

[22] AE CIX at 3.

[23] *Id.* at 7.

[24] AE CIII.

[25] AE CIV at 1.

[26] Appellant's Submission of Case Without Additional Assignments of Error of 18 Mar 2011.

case law at the time, but the appellant leveraged waiver of the motion to his benefit. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted).

During the resentencing hearing, the military judge conducted a thorough inquiry with the petitioner regarding his understanding of, and agreement with, all of the terms and conditions of his post-trial agreement.[27] She specifically questioned the petitioner regarding the withdrawal of the pending motions, which included the motion for reconsideration of the motion for mistrial. The petitioner affirmatively acknowledged that by withdrawing the motions previously filed he was affirmatively "waiving" those issues and that by doing so "preclude[d] the trial court, or any appellate court, from having the opportunity to determine if [he was] entitled to any relief based upon [the withdrawn motions]."[28] Because the adjudged sentence included confinement for 12 years, and his agreement protected him from confinement over 10 years, he realized an actual benefit from the agreement.[29]

The record establishes that the petitioner was fully aware of the matters addressed in the mistrial reconsideration motion, including the MIL. R. EVID. 413 issues it raised. The original motion had been fully litigated in front of him. Furthermore, it was also the basis of several AOEs raised before both this court and the CAAF. Finally, during the resentencing hearing, the military judge specifically directed his attention to the post-trial agreement provision concerning the waiver of the motion, and the petitioner stated that he understood the provision and its impact at his resentencing proceeding and on appeal, and that he was affirmatively and voluntarily waiving the motion. The petitioner voluntarily waived a known right—the petition for mistrial reconsideration motion and the MIL. R. EVID. 413 issues it addressed—at his resentencing proceeding.

Additionally, this court, the trial court, and the CA were "without power to modify, amend, alter, set aside, or in any manner disturb or depart from the judgment[.]" *United States v. Montesinos*, 28 M.J. 38, 43 (C.M.A. 1989) (citation and internal quotation marks omitted). As explained by the court, on remand, the scope of issues which can be considered is limited by the terms and conditions of the remand order. *Id.* As further explained in *United States v. Ginn*, "[a]ll that is to be done on remand is for the court below to consider the matter which is the basis for the remand and then to add whatever discussion is deemed appropriate to dispose of that matter in the original

---

[27] Record of Resentencing at 23-46.

[28] *Id.* at 45.

[29] *Id.* at 127.

opinion. . . . This procedure does not *permit* or *require* starting the review process anew . . . ." 47 M.J. 236, 238 n.2 (C.A.A.F. 1997) (emphasis added).

The CAAF's affirmation of the findings of guilty on the rape, assault, and housebreaking offenses were final and conclusive. At the time of the direct review of petitioner's resentencing proceeding, they were binding on this court. The scope of the CAAF remand limited this court's authority under Artice 66(c) to the sentence approved on remand.

Having concluded that the MIL. R. EVID. 413 legal issues were previously raised at trial and by his first appellate defense team for consideration by this court and the CAAF, and that his second appellate defense counsel did not rebrief these issues following petitioner's valid waiver of this issue on remand and the limited scope of the remand order, we conclude that the petitioner seeks reevaluation of previously considered legal issues. Therefore he has failed to meet the fifth *Denedo* threshold requirement. *Denedo*, 66 M.J. at 126.

*2. No new information because Hills does not apply retroactively*

Even assuming, *arguendo*, that we determined that the MIL. R. EVID. 413 issues had not been previously raised and considered—either at trial or on appeal—the petitioner still fails to provide any new information which we can properly consider. Therefore, he also fails to meet the fourth *Denedo* threshold requirement. We agree that the new information presented in the petition—the *Hills* decision—could not have been discovered through the exercise of reasonable diligence prior to his judgment. However, because we find that *Hills* announced a new rule of criminal procedure that was not retroactive, the petitioner cannot claim its benefit and we cannot consider this new information to grant *coram nobis* review.

The petitioner argues that *Hills* created a new rule which applies retroactively and renders his remaining rape conviction infirm. Alternatively, and conversely, he asserts that *Hills* did not create a new rule, it only restated old law that should have been applied at his trial but was not. Because of this, he argues that due process requires that we set aside his rape conviction.[30] We disagree with both positions.

We are guided in our retroactivity analysis by *Teague v. Lane*, 489 U.S. 288 (1989)—the seminal case on the retroactive application of court-created rules of criminal law—and its progeny. New court-created rules are either substantive or procedural. *Schriro v. Summerlin*, 542 U.S. 348, 351-52 (2004).

---

[30] Petitioner raises the retroactivity of *Hills* as a basis for this court to issue a writ of *audita querela*. But because he also raises it as a basis for a writ of error *coram nobis*, we will address it here first. *See* Petitioner's Reply Brief of 25 Aug 2017.

A new rule is substantive if it alters the range of conduct or class of persons that the law punishes or modifies the elements of an offense. *See Bousley v. United States*, 523 U.S. 614, 620-21 (1998). New substantive rules generally apply retroactively because such rules would "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." *Schriro*, 542 U.S. at 351-52 (citations and internal quotation marks omitted).

In contrast, a new rule is procedural if it regulates "only the *manner of determining* the defendant's culpability[.]" *Id.* at 353 (citation omitted). New procedural rules generally do not apply retroactively. *Teague*, 489 U.S. at 310.

Judged by this standard, if the holding announced in *Hills* created a new rule, that rule—evidence of one charged sexual assault offense cannot be used as MIL. R. EVID. 413 propensity evidence of another charged sexual assault offense in the same case where the accused has pleaded not guilty to both offenses—would be procedural. The holding in *Hills* did not alter the range of conduct or class of persons that the law punishes or modify the elements of the sexual assault offenses involved. It only invalidated an evidentiary procedure used for introducing evidence to be considered by the finder of fact in contested sexual assault trials.

a. *Teague* evaluation

Having determined that if *Hills* created a new rule it was one of procedure, we now turn to whether *Hills* actually did announce a new rule. If it did, we must then determine if that new procedural rule applies retroactively to the petitioner. We find that *Hills* did create a new rule of criminal procedure. We further find that this new rule of criminal procedure does not apply retroactively to petitioner's case.

In *Teague*, the Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310. In *Teague*, the Court went on to recognize two exceptions to the general rule of non-retroactivity: (1) the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; or (2) it is a "watershed" rule. *Id.* at 311 (citations and internal quotation marks omitted). As later explained by the Court, the new procedural rule must either: (1) prohibit punishment for certain conduct or prohibit a certain category of punishment for a class of defendants because of their status or offense; or (2) be a watershed rule—one without which the likelihood of an accurate conviction is seriously diminished—implicating the fundamental fairness and accuracy of

the criminal trial. *Beard v. Banks*, 542 U.S. 406, 416-17 (2004) (citations omitted). Rules that fall within the first exception "are more accurately characterized as substantive rules not subject to [*Teague's*] bar[]" to retroactive application. *Schriro*, 542 U.S. at 352, n.4.

Following the framework of *Teague*, the Supreme Court established a three-step process for determining whether a rule of procedure applies to a case on collateral review. First, we must determine when petitioner's conviction became final. Second, we must survey the legal landscape as of that date and determine whether existing precedent compelled the rule—that is, we must decide whether the rule is actually a "new rule." Third, if the rule is new, we must determine whether either of the two exceptions to the general rule of non-retroactivity applies. *Banks*, 542 U.S. at 411.

(1) Judgment finality

"[A] military justice case is final for the purposes of *Teague* when 'there is a final judgment as to the legality of the proceedings' under Article 71(c), UCMJ." *Loving v. United States*, 64 M.J. 132, 136 (C.A.A.F. 2006) (quoting Art. 71(c)(1), UCMJ). As the petitioner's case was not otherwise reviewable by the CAAF, the judgment in his case became final not later than 6 July 2011, when review of his case had been completed by this court and the petitioner did not file a Petition for Grant of Review by the CAAF.[31] *See* Art. 71(c), UCMJ; CAAF Rule 19(a)(1)(B). The petitioner's case was final for purposes of *Teague* nearly five years prior to the CAAF's decision in *Hills* on 27 June 2016. *See Hills*, 75 M.J. at 350.

(2) Did *Hills* announce a "new" rule?

In determining whether a decision of a court has announced a "new rule," the Court in *Teague* stated:

> In general . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.

---

[31] On 6 July 2011, the CA was notified by written correspondence that the petitioner had been served with our opinion, 60 days had elapsed since that notification and no petition for review had been received, and that appellate review in the petitioner's case was considered complete. Head, Case Management Branch, Navy-Marine Corps Appellate Review Activity (Code 40) ltr 5814 Ser Code 40 of 6 Jul 2011.

*Teague*, 489 U.S. at 301 (citations omitted). "[A] holding is not so dictated . . . unless it would have been apparent to all reasonable jurists." *Chaidez v. United States*, 568 U.S. 342, 347 (2013) (citation and internal quotation marks omitted).

Agreeing with our sister court's decision in *Lewis v. United States*, 76 M.J. 829 (A.F. Ct. Crim. App. 2017), *rev. denied*, __ M.J. __, 2017 CAAF LEXIS 1106 (C.A.A.F Nov 13, 2017), we find that the CAAF's decision in *Hills* announced a new rule of procedure in that it broke new ground, no existing precedent dictated its result, and the result would not have been apparent to all reasonable jurists when the petitioner's conviction became final. *See Chaidez*, 568 U.S. at 347.[32]

We conclude that *Hills* announced a "new rule" of procedure based upon the following four observations. First, prior to its decision in *Hills*, the CAAF found that MIL. R. EVID. 413 was not facially unconstitutional. *See United States v. Wright*, 53 M.J. 476, 483 (C.A.A.F. 2000). The CAAF also suggested that MIL. R. EVID. 413 could be applied to evidence of both charged and uncharged sexual offenses to show propensity. *See United States v. Burton*, 67 M.J. 150, 152 (C.A.A.F. 2009) ("The [g]overnment may not introduce similarities between charged offenses and prior conduct, whether charged or uncharged, to show . . . propensity without using a specific exception within our rules of evidence, such as [MIL. R. EVID.] 404 or 413."). It had also held that uncharged sexual assaults that occurred after the charged sexual offense were not barred by MIL. R. EVID. 413. *See United States v. James*, 63 M.J. 217, 218 (C.A.A.F. 2006). Furthermore, in *Hills*, the CAAF referenced the lack any existing precedent stating, "[h]owever, none of these holdings answer the question of whether [MIL. R. EVID.] 413 may be used as it was in this case." *Hills*, 75 M.J. at 354.

Second, prior to *Hills*, three service appellate courts had determined that MIL. R. EVID. 413 was constitutional when applied in this manner, provided the proper notice had been given, the military judge had properly conducted and made the initial threshold admissibility determinations, and the appropriate instructional safeguards were provided. *See United States v. Bass*, 74 M.J. 806, 815 (N-M. Ct. Crim. App. 2015); *United States v. Barnes*,

---

[32] We recognize, as did our sister court, that our conclusion here is somewhat at odds with the decision of the Army Court of Criminal Appeals (ACCA), in a related but distinct context. *See United States v. Hoffman,* 76 M.J. 758, 767-68 (A. Ct. Crim. App. 2017) (on direct appeal, when determining whether an appellant's failure to object at trial to MIL. R. EVID. 414 instructions waived or forfeited the issue on appeal, the ACCA found *Hills* did not establish a "new rule" because *Hills* did not "overturn or reverse prior case law" and "it was never well settled that the instruction in *Hills* was proper.").

74 M.J. 692, 697 (A. Ct. Crim. App. 2015); *United States v. Maliwat*, 2015 CCA LEXIS 443, at *13-15, unpublished opinion (A.F. Ct. Crim. App. 19 Oct 2015).

Third, from the time of petitioner's trial until well after his conviction became final in 2011, the Military Judges' Benchbook included specific model instructions regarding the use of a charged instance of sexual assault as propensity evidence under MIL. R. EVID. 413 to prove another charged incident of sexual assault.[33]

Fourth, in the nearly 18 months since the *Hills* decision, the courts of criminal appeals and the CAAF have reviewed more than three dozen cases involving assignments of error specifically addressing the *Hills*-implicated MIL. R. EVID. 413 or 414 propensity instruction. In most cases, the appellate courts have set aside the sexual assault convictions impacted and remanded the cases for proceedings in light of the *Hills* opinion and its progeny.

(3) Does the new procedural rule apply retroactively?

Having found that the petitioner's conviction was final before *Hills* announced a new procedural rule, we now turn to the third step in the *Teague* analysis—whether the rule falls into one of the two exceptions requiring retroactive application. We conclude that it does not.

Generally, new rules of criminal procedure—rules that "merely raise the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise"—do not apply retroactively. *Schriro*, 542 U.S. at 352. The rationale is because procedural rules have a "more speculative connection to innocence[.]" *Id.*

As a new procedural rule, the *Hills* rule did not forbid punishment for any particular conduct, nor did it prohibit a certain category of punishment for a class of defendants because of their status or offense. Therefore, the only available exception and permissible way *Hills* can be applied retroactively is if it is deemed a watershed rule.

As explained by the Court in *Schriro*, retroactivity is given only to:

> a small set of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. . . . That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is *seriously* diminished. . . . This class of rules is

---

[33] Military Judges' Benchbook, Dept. of the Army Pamphlet 27-9, ¶ 7-13-1, Note 4 (12 Sep 2002 ed. and 1 Jan 2010 ed.) and Note 4.2 (10 Sep 2014 ed.).

> extremely narrow, and it is unlikely that any . . . ha[s] yet to emerge.

542 U.S. at 352 (citations and internal quotation marks omitted) (alteration in original).

In order to be a watershed rule, the new procedural rule "must be necessary to prevent an impermissibly large risk of an inaccurate conviction. . . . [and must] alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Whorton v. Bockting*, 549 U.S. 406, 418 (2007) (citations and internal quotation marks omitted). Since deciding *Teague*, the Supreme Court has identified no new rules of criminal procedure meriting watershed status. *Id.* This includes the landmark procedural rule announced in *Crawford v. Washington*, 541 U.S. 36 (2004), that "[t]estimonial statements of witnesses absent from trial" are admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross examine [the witness]." *Id.* at 59; *see Bockting*, 549 U.S. at 421 (holding that *Crawford* announced a new rule of criminal procedure that did not merit watershed status).

The only court-created rule of criminal procedure that the Supreme Court has ever recognized as meriting watershed status is the rule announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963), holding that "counsel must be appointed for any indigent defendant charged with a felony." *Bockting*, 549 U.S. at 419. As the Court explained, this is because "[w]hen a defendant who wishes to be represented by counsel is denied representation, . . . the risk of an unreliable verdict is intolerably high." *Id.* (citations omitted).

Although the new procedural rule announced in *Hills* may improve the accuracy of fact finding in some sexual assault cases, the new rule did not upset the CAAF's previous finding that MIL. R. EVID. 413 was a constitutionally valid statute. *See Wright*, 53 M.J. at 483. Nor did *Hills* completely eliminate the use of MIL. R. EVID. 413 propensity evidence in sexual assault cases. *Hills* merely interpreted an existing rule of evidence and announced a new procedural rule regarding the permissible use of otherwise admissible evidence of one charged sexual assault offense in relation to another charged sexual assault offense—an issue it had not previously directly addressed. *Hills*, 75 M.J. at 354. Like *Crawford*, *Hills* addressed an issue of fundamental constitutional concern. However, as made clear by the Court in *Bockting*, that is not enough to merit watershed status. *See* 549 U.S. at 418-21.

We find that the new rule of criminal procedure announced in *Hills* does not fall within one of the two recognized exceptions to non-retroactivity. It is not one which prohibited punishment for certain conduct or prohibited a certain category of punishment for a class of defendants because of their

status or offenses. Nor is it "one without which the likelihood of an accurate conviction [in petitioner's case was] *seriously* diminished[,]" and it did not "constitute a previously unrecognized bedrock procedural element that [was] essential to the fairness of [petitioner's] proceeding." *Bockting*, 549 U.S. at 420, 418.

Having found that *Hills* announced a new rule of criminal procedure that does not apply retroactively to the petitioner's case, we conclude that the petitioner has also failed to meet the fourth *Denedo* threshold requirements for *coram nobis* review. The petitioner has raised issues previously litigated, and he has not presented any new information that we can properly consider. Accordingly, we deny the petition for a writ of *coram nobis*.

We now turn to petitioner's prayer for relief in the form of a writ of *audita querela*.

## C. Writ of *audita querela*

The petitioner avers that a writ of *audita querela* is necessary to prevent continued enforcement of his conviction, which he argues was rendered infirm by *Hills*. We disagree.

The ancient common law writ of *audita querela*, literally translated as having heard the quarrel or complaint, is defined as "[a] writ available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." *Black's Law Dictionary* (7th ed. 1999). In the military justice system, the five common law writs which have been recognized under the All Writs Act are: (1) the writ of *habeas corpus*, (2) the writ of *mandamus*, (3) the writ of *coram nobis*, (4) the writ of prohibition, and (5) the writ of *certiorari*. DAVID A. SCHLUETER, MILITARY CRIMINAL JUSTICE, PRACTICE AND PROCEDURE, § 17-19 (6th ed. 2004). The writ of *audita querela* has never been raised or recognized as a basis for relief under the All Writs Act in the post-conviction military justice context by the CAAF or any of our sister services' courts of criminal appeals. Additionally, the Supreme Court has never opined that a writ of *audita querela* is available in this context. *See Morgan*, 346 U.S. at 512 (holding that a writ of *coram nobis* is available under the All Writs Act as form of relief in the criminal post-conviction context).

Assuming, *arguendo*, that the writ of *audita querela* may be available as a remedy under the All Writs Act in the military justice post-conviction context, we examine what the writ is, its historical use, and how other jurisdictions have interpreted its availability in the criminal context.

In ENGLISH LEGAL HISTORY, L.B. Curzon attributed the introduction of the writ of *audita querela* into practice to the reign of King Edward III of

England (1327-1377).[34] Curzon explained that the writ "was available to re-open a judgment in certain circumstances. It was issued as a remedy to a defendant where an important matter concerning his case had arisen since the judgment. Its issue was based on equitable, rather than common law principles."[35] An example was a monetary judgment paid or otherwise discharged but not recorded as such. Subsequent discovery of the unrecorded payment or discharge would render further execution of the judgment inequitable.[36]

Because it does not challenge the validity of the judgment, a writ of *audita querela* is distinguishable from a writ of *coram nobis*, which challenges the validity of the original judgment. 7A *Corpus Juris Secondum, Audita Querela*, § 2 at 901. Although tracing the lineage of the writ of *audita querela* is a muddled practice at best, what is apparent is that throughout the vast majority of its historical legal development, the writ was exclusively a civil remedy. Moreover, it was a writ of equity in that it only applied post-judgment and did not challenge the validity of the judgment itself.

In 1948, the writ of *audita querela* was formally "abolished" as a remedy in federal civil cases by FEDERAL RULE OF CIVIL PROCEDURE (FED. R. CIV. P.) 60(b).[37] FED. R. CIV. P. 60(b) also abolished the writ of error *coram nobis* as a remedy in federal civil cases but, unlike a writ of *audita querela* which was only historically available in civil cases, a writ of error *coram nobis* was available historically in both civil and criminal courts. *See Morgan*, 346 U.S. at 507. The Court in *Morgan* held that FED. R. CIV. P. 60(b) did not limit the availability of a writ of error *coram nobis*, in the federal criminal post-conviction context, to collaterally attack the validity of a criminal conviction. *Id.* at 512-13. However, the Court in *Morgan* did not reference or opine whether the writ of *audita querela* or any of the other common law writs covered by FED. R. CIV. P. 60(b) would also be available to collaterally challenge a criminal conviction.

Although *Morgan* only addressed the writ of error *coram nobis*, it has been the basis for other federal courts to consider whether a writ of *audita querela* is available to collaterally challenge a conviction. The Seventh Circuit Court of Appeals was the first to address this issue in *United States v. Kimberlin*, 675 F.2d 866 (7th Cir. 1982). The *Kimberlin* court could not conclude from *Morgan* that a writ of *audita querela* "[wa]s unavailable in a

---

[34] L.B. CURZON, ENGLISH LEGAL HISTORY (2d ed. 1979) at 103.

[35] *Id.*

[36] *Id.*

[37] The current provision is found in FED. R. CIV. P. 60(e).

federal criminal case[,]" presuming that the "same result would be reached if a criminal defendant could show that relief from a judgment by means of *audita querela* was necessary to plug a gap in the system of federal post-conviction remedies." *Id.* at 869. However, the *Kimberlin* court was skeptical that a writ of *audita querela* would be the means to fill that gap given the availability of a writ of error *coram nobis* and the history of a writ of *audita querela* as an equitable remedy primarily for judgment debtors. *Id.*

Following *Kimberlin*, there developed a split in the federal courts on when and how a writ of *audita querela* would be available, if at all, to fill any existing gaps in the federal post-conviction remedial framework. A small minority of courts found that a writ of *audita querela* could be used in its purely equitable historical manner. *See, e.g., United States v. Salgado*, 692 F. Supp. 1265, 1268 (E.D. Wash. 1988) (granting the petitioner a writ of *audita querela* vacating his 24-year-old felony conviction for failing to pay a federally imposed transfer tax so that he would no longer be ineligible for amnesty under the Immigration Reform Act of 1986, 8 U.S.C. § 1255a, on purely equitable grounds); *United States v. Ghebreziabher*, 701 F. Supp. 115, 116-17 (E.D. La. 1988) (granting petitioner's petition for writ of *audita querela* and vacating one of his three misdemeanor guilty plea convictions for food stamp trafficking in violation of 7 U.S.C. § 2024(b), on purely equitable grounds so that he would no longer be ineligible for amnesty under the Immigration Reform Act of 1986").

However, the overwhelming majority of federal courts have held that, even if a writ of *audita querela* can provide post-conviction relief, a purely equitable basis is not enough to invoke the writ. Instead, it must be established that a subsequent change in the law created a constitutional defect in the underlying conviction, and that defect is not cognizable under another remedy in the federal post-conviction framework. There must actually exist a gap in the federal post-conviction remedy framework. *See Doe v. Immigration and Naturalization Service*, 120 F.3d 200, 203 n.4 (9th Cir. 1997); *United States v. LaPlante*, 57 F.3d 252, 253 (2nd Cir. 1995); *United States v. Johnson*, 962 F.2d 579, 581 (7th Cir. 1992); *United States v. Reyes*, 945 F.2d 862, 866 (5th Cir. 1991); *United States v. Holder*, 936 F.2d 1, 3 (1st Cir. 1991); *United States v. Ayala*, 894 F.2d 425, 426 (D.C. Cir. 1990). If there is another remedy under which the petitioner can seek relief, such as *coram nobis*, a writ of *audita querela* is not available, even if the other remedy provides no relief. To grant relief under such circumstances would be to do so in a purely equitable manner. *See Doe*, 120 F.3d at 204; *LePlante*, 57 F.3d at 253; *Johnson*, 962 F.2d at 583; *Reyes*, 945 F.2d at 866; *Holder*, 936 F.2d at 3; *Ayala,* 894 F.2d at 429.

Furthermore, a petitioner cannot collaterally challenge his conviction by re-styling his writ of error *coram nobis* "as a petition for a writ of *audita querela* simply to evade the Supreme Court's painstakingly formulated 'retroactivity' rules." *Ayala*, 894 F.2d at 429, n.8.

If we were to conclude that a writ of *audita querela* is available in the military justice post-conviction context, it cannot be issued on purely equitable grounds. As the CAAF has stated, "while [we] have broad authority . . . to disapprove a finding, that authority is not unfettered. It must be exercised in the context of legal—not equitable—standards . . . ." *United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010) (citation omitted).

If we were to conclude that the writ of *audita querela* exists at all in the military justice post-conviction context, we would have to conclude that it could be a remedy under the All Writs Act only when there has been a subsequent change in the law which created a constitutional legal defect in the underlying criminal conviction, and that defect was not addressable by some other post-conviction remedy, such as a writ of error *coram nobis*. *See Doe*, 120 F.3d at 203-04; *LePlante*, 57 F.3d at 253; *Johnson*, 962 F.2d at 583; *Reyes*, 945 F.2d at 866; *Holder*, 936 F.2d at 3; *Ayala,* 894 F.2d at 429.

Despite some federal courts finding that the writ of *audita querela* may exist to fill the interstices in the post-conviction remedial framework, the historical use and meaning of the writ and our authority to act only on legal—not equitable—grounds, absent clear binding precedent to the contrary, lead us to conclude that the common law writ of *audita querela* is not available in the military justice system. As such, the petitioner's request for a writ of *audita querela* is denied.

Even if we were to conclude that the writ of *audita querela* may be available, we would conclude that there was another post-conviction remedy available to the petitioner—the writ of error *coram nobis* he has asserted. Having denied the petitioner *coram nobis* relief, we would also deny a writ of *audita querela*, finding that it is neither necessary nor appropriate, as there exists no post-conviction remedy gap for the writ of *audita querela* to fill.

### III. Conclusion

The petition for extraordinary relief in the nature of a writ of error *coram nobis* or a writ of *audita querela* is denied.

Senior Judge MARKS and Judge JONES concur.

For the Court



R.H. TROIDL
Clerk of Court